Keiser, Appellant, *v.* Mann et al., Appellees.*

(No. 188—Decided October 23, 1956.)

*Mr. W. T. Reed,* for appellant.
*Mr. Wm. E. Knepper,* for appellees.

Gillen, J.   The petition in this case describes certain real estate owned by plaintiff and defendants situated in the village of Waverly, Ohio.   Plaintiff's premises is a triangular lot bounded on the long sides by routes Nos. 23 and 104 and on the back side by the property of defendants.   Plaintiff had constructed a motel building in the apex of the triangle, which motel has been in operation for a number of years.   It is the claim of plaintiff that the State Highway Department had provided ample drainage facilities to take care of the surface water which flowed in a southerly direction and emptied into Crooked Creek.   The land south of plaintiff's property between the two highways, which is now the premises of defendants, formerly sloped to the south and provided a natural drainage for the surface water from the area around plaintiff's property. It is the further claim of plaintiff that some time during the month of August 1954 defendants filled in their premises with earth, gravel and shale, completely destroying and obliterating

*Motion to certify the record overruled February 20, 1957.   Appeal dismissed, 166 Ohio St., 190.

the highway and natural drainage, so as to divert the surface water from Crooked Creek onto the premises of the plaintiff.

The petition sets forth three causes of action, the first of which seeks injunctive relief, and the second and third causes ask for damages. The issues were submitted to a jury, and, at the close of plaintiff's testimony, the trial court dismissed the first cause of action and sustained a motion for a directed verdict on the second and third causes of action. Judgment was entered for defendants, from which an appeal on questions of law has been perfected.

The record discloses that the grade of route No. 23 is downgrade toward the north from Crooked Creek to plaintiff's motel and that the grade of route No. 104 near the motel is higher than the grade of route No. 23. Defendants did fill in their premises, but the extent of the fill is not made clear by the evidence. In the summer of 1954, the State Highway Department, while making some improvements in the area, built a temporary road from route No. 104 to route No. 23, about 25 feet behind the motel. This road was made by putting in a fill about 20 feet wide and five feet deep, so that the ground between the motel and the temporary road was about five feet lower than the surface of the temporary road. This temporary road has never been removed.

Witness Parker, a design engineer for the highway department, testified that the drainage in the old canal at the west side of route No. 104 at the foot of the hill, to the west, was not well maintained and that the highway department had been studying the drainage problem in that entire area for the purpose of correcting the situation.

Plaintiff claims that during heavy rainfalls on July 6, 1955, and July 20, 1955, the basement of his motel was flooded as a direct result of defendants' act of changing the natural flow of the surface water. A weather expert testified that the rainfall in that area was as follows:

| July  6, 1955 | 1.90 inches |
| July 18, 1955 | .67 " |
| July 19, 1955 | .24 " |
| July 20, 1955 | none |
| July 21, 1955 | none |

| | | |
|---|---|---|
| July 27, 1955 | 1.23 | " |
| July 28, 1955 | .68 | " |
| Aug. 8, 1955 | 1.90 | " |

There can be no doubt that plaintiff's basement was flooded on July 6, and that the water entered through a basement window at the rear of the building. Witness Robert Keiser testified that he saw water coming from the west across route No. 104 onto the motel property. Witness Arthur Keiser saw water at the rear of the motel but did not look to see whether any water was flowing across route No. 104. Witness Schrieber saw water at the east, west and south of the motel but did not say where it came from. None of the witnesses testified that water flowed from defendants' property toward the motel. It is the claim of plaintiff, however, that if defendants had not made the fill on their premises the natural drainage across their property would have been adequate to carry all the surface water to Crooked Creek, thereby avoiding the flooding of his basement. It is said in the case of *Lunsford* v. *Stewart,* 95 Ohio App., 383, 120 N. E. (2d), 136, that:

"The owner of an urban lot which receives the natural flow of surface water from an adjoining lot may divert the natural flow of such surface water by filling his lot and erecting structures thereon, and, where such filling and erecting of structures is accomplished in a reasonable manner, no liability arises in favor of such adjoining owner."

It is strongly urged by counsel for plaintiff that this rule is not applicable in the instant case since the factual situation is entirely different. It is pointed out that in the case of *Lunsford* v. *Stewart, supra,* the property involved had been provided with street and sewer improvements while in the case at bar the village of Waverly had not made such improvements. It is stipulated in the record that the property of both plaintiff and defendants is within the corporate limits of Waverly. The court, in its opinion, in the case of *Lunsford* v. *Stewart, supra,* quoted with approval the rule announced in *Springfield* v. *Spence,* 39 Ohio St., 665, as follows:

" 'The owner of private lots can raise the same to grade if he so desires, and can thus keep out all surface water * * *.' "

With respect to rural areas, Ohio has adopted the civil-law rule, *i. e.*, that the dominant estate has a natural easement or servitude in the lower or subservient estate for drainage of water flowing in its natural course. This rule has no application to urban areas. See *Lunsford* v. *Stewart* and *Springfield* v. *Spence, supra.*

It is further urged by counsel for plaintiff that whether defendants' use of their property was reasonable under the circumstances presented an issue of fact which should have been submitted to the jury. There is no evidence in the record tending to prove that the fill made by defendants was unreasonable. As a matter of fact, the evidence discloses that the surface of their land, after the fill, was no higher than the grade of the temporary road constructed by the State Highway Department. Plaintiff had the burden of proving that defendants had improperly used their premises in such manner as to result in injury to him.

"6. In order to recover against a defendant in a tort action, plaintiff must produce evidence which furnishes a reasonable basis for sustaining his claim. If his evidence furnishes a basis for only a guess, among different possibilities, as to any essential issue in the case, he fails to sustain the burden as to such issue." *Landon* v. *Lee Motors, Inc.*, 161 Ohio St., 82, 118 N. E. (2d), 147.

It is said in the case of *Gerich* v. *Republic Steel Corp.*, 153 Ohio St., 463, 92 N. E. (2d), 393, that:

"2. It is the duty of a party on whom the burden of proof rests to produce evidence which furnishes a reasonable basis for sustaining his claim. If the evidence so produced furnishes only a basis for a choice among different possibilities as to any issue in the case, he fails to sustain the burden as to such issue."

Defendants had a right to fill their land, and there is no evidence to prove that they did so in an unreasonable manner. The record does not show that any water flowed from defendants' land on to plaintiff's premises. As a matter of fact, it is clearly apparent, from the evidence adduced, that the temporary road constructed by the highway department was between the fill made by defendants and the motel. The trial court proper-

ly sustained the motion for a directed verdict. The judgment below is, therefore, affirmed.

*Judgment affirmed.*

McCurdy, P. J., and Collier, J., concur.